[Cite as *State v. Wood*, 2022-Ohio-3536.]

COURT OF APPEALS
PERRY COUNTY, OHIO
FIFTH APPELLATE DISTRICT

| | | |
|---|---|---|
| STATE OF OHIO | : | JUDGES: |
| | : | Hon. Earle E. Wise, Jr., P.J. |
| Plaintiff-Appellee | : | Hon. Patricia A. Delaney, J. |
| | : | Hon. Craig R. Baldwin, J. |
| -vs- | : | |
| | : | |
| SCOTT A. WOOD | : | Case No. 22-CA-00002 |
| | : | |
| Defendant-Appellant | : | O P I N I O N |

CHARACTER OF PROCEEDING:              Appeal from the Court of Common
                                     Pleas, Case No. 21-CR-0046

JUDGMENT:                            Affirmed in part, vacated and
                                     remanded in part

DATE OF JUDGMENT:                    September 30, 2022

APPEARANCES:

For Plaintiff-Appellee                For Defendant-Appellant

JOSEPH FLAUTT                         TODD W. BARSTOW
111 North High Street                 261 West Johnstown Road
P.O. Box 569                          Suite 204
New Lexington, OH  43764-0569         Columbus, OH  43230

*Wise, Earle, P.J.*

{¶ 1}   Defendant-Appellant Scott Wood appeals the January 31, 2021 judgment of conviction and sentence of the Common Pleas Court of Perry County, Ohio. Plaintiff-Appellee is the state of Ohio.

FACTS AND PROCEDURAL HISTORY

{¶ 2}   This case began with the execution of a search warrant at Wood's home located at 229 High Street in Perry County, Ohio. Lieutenant Kevin Starrett presented an affidavit for the search warrant to Judge Dean L. Wilson of the Perry County Municipal Court on May 10, 2021. Judge Wilson signed the warrant that day and Starrett and other officers from Perry and Muskingum County executed the warrant the following day. The warrant authorized officers to search for electronic devices and documents demonstrating Wood's involvement in drug trafficking.

{¶ 3}   During the execution of the search warrant, officers observed illegal drugs and drug paraphernalia in plain view. As a result, a second search warrant was obtained the same day to permit the officers to search for drugs and drug paraphernalia. Pursuant to that warrant, officers located large quantities of drugs and cash in Wood's bedroom. In a red Solo cup on top of the dresser in separate plastic baggies were 15.343 grams of cocaine and 20.289 grams of heroin. Also on the dresser was a baggie containing 55.511 grams of methamphetamine. In a bowl on the dresser was another baggie of methamphetamine weighing 16.311 grams. On the floor of the bedroom was a briefcase. On top of the briefcase was a baggie containing 18.961 grams of fentanyl. On the floor beside the briefcase was another baggie containing 36.560 grams of fentanyl. Inside the briefcase were four baggies one containing 113.551 grams of cocaine, a second

containing 230.2 grams of methamphetamine, a third containing 35.706 grams of methamphetamine, and the fourth containing 10.162 grams of methamphetamine. Also inside the briefcase were insurance documents, and a court document, both bearing Wood's name.

{¶ 4} A large amount of cash was also found in the bedroom; $2,280 in a pair of jeans and $1,642 in the dresser. The bedroom also contained digital scales with a powder residue on them and Mannitol, a substance used to cut drugs in order to increase profit. In other areas of the house officers located a gas bill with the address of the home on it and listing Wood as the account holder, and well as the deed for the home listing Wood as the grantee.

{¶ 5} Wood was arrested and charged, but bonded out of jail on May 14, 2021. On May 24, 2021, another search warrant was executed at Wood's home. Appellant's cell phone was seized as well as $3,125 in cash which he had on his person. Additionally, officers seized a digital scale, two boxes of baggies, and a baggie containing 14.616 grams of fentanyl. Wood was again taken into custody.

{¶ 6} While incarcerated, Wood made several phone calls to his father. The calls were monitored and recorded. Wood asked his father to go to his storage unit and retrieve the cash he had in a safe inside the unit. Wood provided his father with the unit number and the combination to the lock. Officers subsequently searched the unit, but found no safe. A search was therefore conducted at Wood's father's home where two safes and a yellow trash bag, all containing cash, were located. A total of $16,541 in cash was seized from the safes and trash bag.

{¶ 7} As a result of these events, on July 1, 2021, the Perry County Grand Jury returned an indictment charging Wood as follows:

{¶ 8}   Count One, aggravated trafficking in drugs pursuant to R.C. 2925.03(A)(2) and (C)(1)(f), a felony of the first degree. This count contained a major drug offender specification and a forfeiture specification.

{¶ 9}   Count two, aggravated possession of drugs pursuant to R.C. 2925.11(A) and (C)(1)(e), a felony of the first degree. This count contained a major drug offender specification and a forfeiture specification.

{¶ 10} Count three, trafficking in cocaine pursuant to R.C. 2925.03 (A)(2) and (C)(4)(g), a felony of the first degree. This count contained a major drug offender specification and a forfeiture specification.

{¶ 11} Count four, possession of cocaine pursuant to R.C. 2925.11(A) and (C)(4)(f), a felony of the first degree. This count contained a major drug offender specification and a forfeiture specification.

{¶ 12} Count five, trafficking in a fentanyl-related compound pursuant to R.C. 2925.03(A)(2)and (C)(9)(g), a felony of the first degree. This count contained a forfeiture specification.

{¶ 13} Count six, possession of a fentanyl-related compound pursuant to R.C. 2925.11(A) and (C)(11)(f), a felony of the first degree. This count contained a forfeiture specification.

{¶ 14} Count seven, trafficking in heroin pursuant to R.C. 2925.03(A)(2)and (C)(6)(e), a felony of the second degree. This count contained a forfeiture specification.

{¶ 15} Count eight, possession of heroin pursuant to R.C. 2925.11(A) and (C)(6)(d), a felony of the second degree. This count contained a forfeiture specification.

{¶ 16} Count nine, trafficking in a fentanyl-related compound pursuant to R.C. 2925.03(A)(2) and (C)(9)(g)(e), a felony of the second degree. This count contained a forfeiture specification.

{¶ 17} Count ten, possession of a fentanyl-related compound pursuant to R.C. 2925.11(A) and (C)(11)(d), a felony of the second degree. This count contained a forfeiture specification.

{¶ 18} Count eleven, money laundering pursuant to R.C. 1315.55(A)(2), a felony of the third degree. This count contained a forfeiture specification.

{¶ 19} Wood entered pleas of not guilty to the charges. He filed numerous pro-se motions including a motion to suppress based on the May 10 and 11, 2021 search warrants. Counsel also filed a motion to suppress based on the May 10, 2021 search warrant. A hearing was held on the matter on December 15, 2021. The trial court denied both motions.

{¶ 20} On January 24, 2022 the matter proceeded to a jury trial. The state elicited the above outlined evidence. Additionally, the state presented testimony from Nickolas Sarvey, an admitted felon, drug user and drug dealer. Sarvey testified he routinely purchased fentanyl and methamphetamine from Wood and did so in May of 2021 after Wood bonded out of jail. On that occasion Sarvey purchased a half pound of methamphetamine and an ounce of fentanyl. He stated Wood retrieved the drugs from a bag inside a closet in his bedroom. Sarvey testified received no incentive for his testimony.

{¶ 21} Wood rested without presenting evidence.

{¶ 22} After hearing the evidence and deliberating, the jury convicted Wood as charged and found sufficient evidence to enter a forfeiture of the property described in

the forfeiture specifications. Wood was subsequently sentenced to an aggregate prison term of 50 to 55 years including enhanced penalties for the major drug offender specifications.

{¶ 23} Wood filed an appeal and the matter is now before this court for consideration. He raises four assignments of error for our consideration as follow:

I

{¶ 24} "THE TRIAL COURT ERRED AND DEPRIVED APPELLANT OF DUE PROCESS OF LAW AS GUARANTEED BY THE FOURTEENTH AMENDMENT TO THE UNITED STATES CONSTITUTION AND ARTICLE ONE SECTION TEN OF THE OHIO CONSTITUTION BY FINDING HIM GUILTY OF AGGRAVATED TRAFFICKING IN DRUGS; AGGRAVATED POSSESSION OF DRUGS; TRAFFICKING IN DRUGS; POSSESSION OF DRUGS; TRAFFICKING IN FENTANYL-RELATED COMPOUND; POSSESSION OF FENTANYL RELATED COMPOUND; AND MONEY LAUNDERING AS THOSE VERDICTS WERE NOT SUPPORTED BY SUFFICIENT EVIDENCE AND WERE ALSO AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE."

II

{¶ 25} "THE TRIAL COURT ERRED TO THE PREJUDICE OF THE APPELLANT BY IMPOSING ADDITIONAL PRISON TERMS FOR BEING A MAJOR DRUG OFFENDER."

III

{¶ 26} "THE TRIAL ERRED TO THE PREJUDICE OF APPELLANT BY OVERRULING HIS MOTION TO SUPPRESS EVIDENCE."

IV

{¶ 27} "THE TRIAL COURT SENTENCED APPELLANT TO INDEFINITE TERMS OF INCARCERATION PURSUANT TO A STATUTORY SCHEME THAT VIOLATES APPELLANT'S CONSTITUTIONAL RIGHT TO DUE PROCESS OF LAW AS GUARANTEED BY THE UNITED STATES AND OHIO CONSTITUTIONS."

I

{¶ 28} In his first assignment of error, Wood argues his convictions are against the manifest weight and sufficiency of the evidence. We disagree.

{¶ 29} On review for sufficiency, a reviewing court is to examine the evidence at trial to determine whether such evidence, if believed, would support a conviction. *State v. Jenks*, 61 Ohio St.3d 259, 574 N.E.2d 492 (1991). "The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *Jenks* at paragraph two of the syllabus, following *Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). On review for manifest weight, a reviewing court is to examine the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine "whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." *State v. Martin*, 20 Ohio App.3d 172, 175, 485 N.E.2d 717 (1st Dist.1983).  See also, *State v. Thompkins*, 78 Ohio St.3d 380, 678 N.E.2d 541 (1997). The granting of a new trial "should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction." *Martin* at 175.

{¶ 30} Although titled as a challenge to the sufficiency and manifest weight of the evidence, Wood does not argue the state failed to prove any one element of any of the charged offenses. Instead, Wood makes a one-paragraph argument challenging only the credibility of the state's evidence. Specifically, Wood points out the state presented no evidence of DNA or finger prints on any of the items seized from his home, no evidence of unusual activity at the home, or of any controlled buys from the home. Wood additionally points out the state presented testimony from Nicolas Sarvey, a convicted felon, drug user, and drug dealer.

{¶ 31} But neither finger prints nor DNA evidence is required to support a conviction for any criminal act. Likewise, neither controlled buys nor evidence of unusual activity are required to support a conviction for trafficking offenses. As to the testimony of Sarvey, it is well established that the credibility of a witness is a matter for the trier of fact to sort out. A jury is free to believe all, part or none of the testimony of each witness. See *State v. Antill*, 176 Ohio St. 61, 67, 197 N.E.2d 548 (1964). Upon review, we find no evidence in the record to support a finding that the jury lost its way in making its credibility determinations.

{¶ 32} The first assignment of error is overruled.

II

{¶ 33} In his second assignment of error, Wood argues the trial court erred in sentencing him as a major drug offender on counts 1, 2, 3, and 4. These counts alleged trafficking and possession of methamphetamine and cocaine. At sentencing the trial court merged count 1 with count 2 and count 3 with count 4. The state elected to proceed to sentencing on counts 2 and 3. Wood was sentenced to 11 years on each count, and also

received an additional 3 years on each count for the major drug offender specifications attendant to each count for an additional 6 years of incarceration.

{¶ 34} Wood argues that while he is subject to the 11-year sentence as a major drug offender, he is not subject to the additional 3-year terms imposed by the trial court pursuant to R.C. 2941.1410. Wood argues these additional terms are applicable only to offenses involving fentanyl-related compounds. The state agrees and concedes this argument. Wood's second assignment of error is therefore sustained. Wood's sentence is vacated and the matter is remanded for a new sentencing hearing.

III

{¶ 35} In his third assignment of error, Wood argues the trial court erred in overruling his motion to suppress because the information contained in the affidavit was stale. We disagree.

Standard of Review

{¶ 36} As stated by the Supreme Court of Ohio in *State v. Leak*, 145 Ohio St.3d 165, 2016-Ohio-154, 47 N.E.3d 821, ¶ 12:

> "Appellate review of a motion to suppress presents a mixed question of law and fact." *State v. Burnside*, 100 Ohio St.3d 152, 2003-Ohio-5372, 797 N.E.2d 71, ¶ 8. In ruling on a motion to suppress, "the trial court assumes the role of trier of fact and is therefore in the best position to resolve factual questions and evaluate the credibility of witnesses." *Id.*, citing *State v. Mills*, 62 Ohio St.3d 357, 366, 582 N.E.2d 972 (1992). On appeal, we "must accept the trial court's findings of fact if they are supported by competent, credible

evidence." *Id.*, citing *State v. Fanning*, 1 Ohio St.3d 19, 20, 437 N.E.2d 583 (1982). Accepting those facts as true, we must then "independently determine as a matter of law, without deference to the conclusion of the trial court, whether the facts satisfy the applicable legal standard." *Id.*

{¶ 37} As the United States Supreme Court held in *Ornelas v. U.S.*, 517 U.S. 690, 116 S.Ct. 1657, 1663, 134 L.Ed.2d 94 (1996), "…as a general matter determinations of reasonable suspicion and probable cause should be reviewed de novo on appeal."

Search Warrants in General

{¶ 38} The Fourth Amendment to the United States Constitution and Section 14, Article I, Ohio Constitution, prohibit the government from conducting unreasonable searches and seizures of persons or their property. *Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968); *State v. Andrews*, 57 Ohio St.3d 86, 87, 565 N.E.2d 1271 (1991). In determining the sufficiency of probable cause in an affidavit submitted for a search warrant, a trial judge or magistrate must make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit, including the veracity and basis of knowledge of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place. *State v. George*, 45 Ohio St.3d 325, 544 N.E.2d 640, at paragraph one of the syllabus (1980), citing *Illinois v. Gates*, 462 U.S. 213, 238-239, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983). As a reviewing court, we must accord great deference to the issuing judge's determination of probable cause. See *George*, at paragraph two of the syllabus. Doubtful or marginal cases should be resolved in favor of upholding the warrant. *Id.* The totality of the circumstances must

be examined in determining whether probable cause existed for a search warrant. *Illinois v. Gates*, supra. "Probable cause" means only the probability and not a prima facie showing of criminal activity. *George*, supra, at 644. See, also, *Beck v. Ohio*, 379 U.S. 89, 85 S.Ct. 223, 13 L.Ed.2d 142 (1964).

Staleness

{¶ 39} "There is no arbitrary time limit that dictates when information [offered to support a search warrant application] becomes stale." *State v. Ingold*, 10th Dist. Franklin No. 07-AP648, 2008-Ohio-2303. Rather, "[t]he test for staleness is whether the alleged facts justify the conclusion that contraband is probably on the person or premises to be searched at the time the warrant issues." *Id.* "The question of staleness is not measured solely by counting the days between the events listed in the affidavit and the application for warrant." *Id.* at 23. "Ohio courts have identified a number of factors to consider in determining whether the information contained in an affidavit is stale, including the character of the crime, the criminal, the thing to be seized, as in whether it is perishable, the place to be searched, and whether the affidavit relates to a single isolated incident or ongoing criminal activity." *Id.*

{¶ 40} Particularly relevant here, when an affidavit supporting a warrant involves ongoing criminal activity like drug trafficking, the affidavit may support the issuance of a search warrant even when the information provided in the affidavit is not recent. *State v. Stewart*, 5th Dist. Perry No. 21-CA-00008, 2021-Ohio-4444 ¶ 15 citing United *States v. Ortiz*, 143 F.3d 728, 733 (2d Cir. 1998), and *United States v. Martino*, 664 F.2d 860, 867 (2d Cir. 1981) ("[W]hen the supporting facts 'present a picture of continuing conduct or an ongoing activity, ... the passage of time between the last described act and the presentation of the application becomes less significant.' ")

{¶ 41} For example, information in an affidavit over one month old has been found to support probable cause to issue a search warrant where the affidavit describes ongoing criminal activity. See, e.g., *State v. Clouser*, 4th Dist. Highland No. 16CA4, 2016-Ohio-5370, 2016 WL 4268772, ¶ 16-17 (two and one-half months between last incidents of drug transactions and warrant application not stale and supported probable cause); *State v. Prater*, 12th Dist. Warren No. CA2001-12-114, 2002-Ohio-4487, 2002 WL 2005708, ¶ 10-14 (six months between last drug transactions and warrant application not stale and supported probable cause).

{¶ 42} In the instant matter, the information provided in the affidavit demonstrated Wood had been engaged in ongoing criminal activity for several years. Affiant, Lieutenant Kevin Starrett, indicated (1) On July 2, 2019, Wood was in a vehicle where four grams of methamphetamine was found; (2) On October 5, 2020, Wood sold a confidential informant (CI) half an ounce of methamphetamine; (3) the same CI indicated Wood had been routinely providing him with between one quarter and one half ounce of methamphetamine and the CI had seen Wood in possession of approximately one pound of methamphetamine around the time of the controlled buy; (4) On November 2, 2020, Todd Wolfe, Wood's girlfriend's uncle, advised Starrett that Wood had been providing methamphetamine to his drug-addicted niece; (5) information from a cell phone seized in a separate matter in February of 2021, demonstrated Wood was selling methamphetamine in January of 2021; (6) records obtained from Wood's Facebook account indicated he was involved in drug trafficking between July and December of 2020; (7) On April 30, 2021, a CI indicated Wood purchased a home at 229 High Street in Roseville, Ohio, that he lived there with his girlfriend, and that he was in possession of a large quantity of methamphetamine which he stored at the High Street home; (8) Starrett

confirmed Wood owned the home at 229 High Street and Deputy Josh Conrad observed Wood and his girlfriend at the home. May 10, 2021 search warrant at ¶ 3-9, 13-14. The warrant was executed on May 11, 2021

{¶ 43} The forgoing establishes a lengthy, ongoing investigation of drug activity before the warrant application. The newest information provided by the affiant regarding potential drug trafficking was only 10 days old. We find the trial court did not err in finding the information was not stale, and supported probable cause.

{¶ 44} The third assignment of error is overruled.

IV

{¶ 45} In his final assignment of error, Wood argues his indefinite sentence, imposed pursuant to the Reagan Tokes Act, is a violation of his constitutional right to trial by jury, equal protection and due process of law, and further violates the constitutional requirement of separation of powers by permitting the Ohio Department of Rehabilitation and Corrections to potentially add additional time to his sentence based upon his behavior in the institution.  We disagree.

{¶ 46} Recently, in *State v. Householder*, 5th Dist. Muskingum No. CT2021-0026, 2022-Ohio-1542, we set forth this Court's position on Wood's arguments:

> For the reasons stated in the dissenting opinion of The Honorable W.
> Scott Gwin in *State v. Wolfe*, 5th Dist. Licking No. 2020CA00021,
> 2020-Ohio-5501, we find the Reagan Tokes Law does not violate
> Appellant's constitutional rights to trial by jury and due process of
> law, and does not violate the constitutional requirement of separation
> of powers. We hereby adopt the dissenting opinion in *Wolfe* as the

opinion of this Court. In so holding, we also note the sentencing law has been found constitutional by the Second, Third, Sixth, and Twelfth Districts, and also by the Eighth District sitting en banc. See, e.g., *State v. Ferguson*, 2nd Dist. Montgomery No. 28644, 2020-Ohio-4153; *State v. Hacker*, 3rd Dist. Logan No. 8-20-01, 2020-Ohio-5048; *State v. Maddox*, 6th Dist. Lucas No. L-19-1253, 2022-Ohio-1350; *State v. Guyton*, 12th Dist. Butler No. CA2019-12-203, 2020-Ohio-3837; *State v. Delvallie*, 8th Dist. Cuyahoga No. 109315, 2022-Ohio-470. Further, we reject Appellant's claim the Reagan Tokes Act violates equal protection for the reasons stated in *State v. Hodgkin*, 12th Dist. Warren No. CA2020-08-048, 2021-Ohio-1353.

{¶ 47} Based on the forgoing authority, Wood's final assignment of error is overruled.

{¶ 48} The judgment of the Perry County Court of Common Pleas is affirmed in part and vacated in part.

By Wise, Earle, P.J.

Delaney, J. and

Baldwin, J. concur.

EEW/rw

[Cite as *State v. Wood*, 2022-Ohio-3536.]